**DELHI GAS PIPELINE COMPANY,**
Appellant,

v.

**George L. REID et al., Appellees.**

No. 5201.

Court of Civil Appeals of Texas,
Waco.

Dec. 7, 1972.

Rehearing Denied Jan. 4, 1973.

Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Robert F. Bartlett, Canton, Bob F. Young, Dallas, for appellant.

Elliott & Bass, Canton, Wynne & Wynne, Wills Point, for appellees.

## OPINION

McDONALD, Chief Justice.

This is a condemnation case wherein Delhi Gas Pipeline condemned a pipeline easement of 2.766 acres across a 148.766 acre tract owned by defendants Reid. Such easement is 50 feet wide, and extends from north to south 2410 feet. The pipe is 12¾ inches in diameter, and is buried 3 feet below ground level. The line carries hydrogen sulphide, a lethal, deadly and dangerous gas, at pressures from 750 to 1200 pounds.

Trial to a jury resulted in verdict finding: 1) The 2.766 acres taken by easement had a value of $450 per acre before the taking; 2) and a value of $25 per acre after the taking; 3) the 146 acres remainder had a value of $450 before the taking; 4) and a value of $250 per acre after the taking.

The trial court rendered judgment on the verdict for defendants for $28,975 ($30,375 less $1,400 deposited by plaintiff).

Plaintiff appeals on 3 points contending the trial court erred in permitting defendants' witness Parkinson to testify that a Pan American pipeline on his property had ruptured, killing 10 head of cattle and almost killing his daughter and her son and ruining their house; such evidence being admitted over plaintiff's objection that the testimony involved a separate tort and was not relevant to the market value of defendants' land; and that the testimony involved another pipeline, and there is no evidence the same situation exists as to the plaintiff's pipeline.

The judgment awarded $425 per acre damage for the 2.766 acre easement, and $200 per acre damage for the 146 acre remainder. The testimony range from the 9 witnesses was from $475 to $276 per acre damage for the 2.766 acres; and $250 to 0 per acre damage to the 146 acre remainder.

All defendants' witnesses testified that buyers tend to be driven off by fear of a pipeline which carries a dangerous substance. All plaintiff's witnesses testified they had not found fear of pipeline leaks or explosions a material factor in the market value of such property; and plaintiff offered in evidence that an expensive home and a modern church had been built on tracts covered by pipeline easements in the vicinity.

Whether fear of pipelines affected value was a hotly contested issue in the case.

Two of plaintiff's witnesses on cross examination were asked about a Pan American pipeline which had ruptured in the vicinity of defendants' house, and both denied personal knowledge of the incident.

As a rebuttal witness defendants called Kirby Parkinson. He testified he lived 1½ miles from defendants' property; that he knew the market value of land in the community; that the 2.766 acres were worth $400 per acre before the taking, and $25 per acre after the taking; that the 146 acre remainder was worth $400 per acre before the taking, and $200 per acre after the taking; that placing the pipeline on the property reduced the market value of the property because the pipeline was dangerous; that people had come to try to buy land from him, but when they learned he had a pipeline on his land they would not buy it.

He further testified a pipeline ruptured on his land killing 10 head of cattle, and almost killing his daughter and her son, and ruined their house (which was built 100 feet back from the pipeline); that the pipeline on his property and the pipeline on

defendants' property went into the same plant.

Plaintiff objected that the testimony involved a separate tort and was not relevant to the market value of the land at issue; and that the testimony involved another pipeline and there was no evidence the same situation existed as to the pipeline in the present case.

The trial court overruled the objections but stated "I will limit it on the limited purpose that it relate to market value."

■ An owner is not entitled to recover anything in an eminent domain proceeding as being the estimated amount of damages likely to be suffered in the future from leaks or explosions in the pipeline.

■ But if there exists actual danger of future leaks or explosions in the line, and the land thereby suffers a present depreciation in the value, the owner is entitled to have those facts taken into account as constituting an element of his damage. 38 A.L.R.2d 801; 27 Am.Jur.2d 184.

■■ And defendant is entitled to prove that fear of pipelines on the part of the buying public diminished the value of the land. Tennessee Gas Trans. Co. v. Adamsen, CCA, NWH, Tex.Civ.App., 262 S.W. 2d 445. And defendant is entitled to recover the difference in the market value of the easement strip and remainder before and after taking. White v. Natural Gas Pipeline Co. of America, Tex.S.Ct., 444 S. W.2d 298.

■ As noted plaintiff's witnesses testified fear of pipeline leaks and explosions did not affect the market value of the property; two of them denied knowledge of an explosion of a nearby pipeline; and plaintiff proved the erection of an expensive home and church near a pipeline in the community.

We think the testimony of Parkinson admissible, and that in any event, reversible error has not been shown. Rule 434 Texas Rules of Civil Procedure. There is no showing the testimony resulted in award of damages for future tort; and the record does show some similarity between the pipeline on Parkinson's land and the pipeline on defendants' land. And the trial court limited the testimony to its relation to market value.

Moreover plaintiff did not request any instructions to the jury limiting consideration of such testimony. Rule 273 T.R.C.P.

All defendants' points have been considered and are overruled.

Affirmed.